UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROBIN MCCLAIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:05-CV-287 CAS |
| ) | |
| GUILFORD PHARMACEUTICALS, ) | |
| PRODUCTS, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This employment discrimination matter is before the Court on defendant's motion for summary judgment. Plaintiff opposes the motion and the matter is now fully briefed. The Court will grant the motion in part and deny it in part for the reasons set forth below.

### I. BACKGROUND

Plaintiff Robin McClain, a self-described alcoholic, was employed by defendant Guilford Pharmaceutical Products, Inc. ("Guilford") as a pharmaceutical sales representative, from January 2001 until her termination in January 2004. In her two-count complaint, plaintiff alleges the following. On January 6, 2004, while attending a sales meeting in Florida, she was induced to drink to excess by her supervisor, Michael Kelly, leading to a verbal confrontation between the two. The following day, January 7, 2004, plaintiff requested Family and Medical Leave to enter rehabilitation for her alcoholism. Plaintiff's request was granted, and Kerry Clem, Guilford's National Sales Director, told plaintiff that he would hold her position while she completed rehabilitation. Plaintiff returned to St. Louis and enrolled in an alcohol rehabilitation program.

Plaintiff received a letter from Guilford dated January 9, stating that Guilford had "accepted [her] resignation," thereby effectively terminating her. Plaintiff alleges she never intended to resign from her position with Guilford. Plaintiff asserts Guilford violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq. (FMLA") (1) by interfering with her right to take medical leave because of a serious health condition; and (2) by terminating her in retaliation for requesting FMLA leave. Plaintiff also alleges Guilford failed to accommodate her disability, alcoholism, and discharged her because she was perceived as disabled, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq..

Guilford now moves for summary judgment, arguing McClain's ADA claim fails as a matter of law because she is unable to establish that she is "disabled" within the meaning of the ADA. Guilford argues McClain is unable to point to any probative evidence suggesting that she is (or once was) substantially limited in one or more major life activities, or that Guilford perceived her as such. Guilford also argues that even if McClain is disabled within the meaning of the ADA, she is not entitled to recover because she engaged in misconduct that justified Guilford's termination of her employment. Guilford further argues that due to her misconduct, plaintiff's FMLA claim fails as a matter of law. In support of its motion, Guilford submitted, *inter alia*, deposition excerpts, affidavits, and the expert report of psychologist Sharon Lightfoot, PhD. The evidence revealed the following.

McClain began working for Guilford on or about January 2001, as a Clinical Hospital Specialist ("CHS") or sales representative. McClain was one of the top five CHSs for Guilford in terms of annual sales in both 2002 and 2003.

In 2002, as a result of Guilford purchasing a new drug, Aggrastat, Guilford hired

2

approximately 20 new CHSs, nearly doubling the company's sales force. In January 2004 Guilford held its National Sales Meeting at a resort in Florida. This was the company's first company-wide meeting since Guilford's purchase of Aggrastat.

On January 6, 2004, the first full day of the sales meeting, the CHSs participated in training sessions for Aggrastat and were given the opportunity to meet and interact with one and other in the study sessions. Throughout the evening, McClain essentially ignored all of the new CHSs and otherwise acted in a rude manner. At one point, McClain stood up and pointed her finger at David Fjelstul, a new CHS, and yelled "you're too young to know what you're talking about." Mike Kelly, Vice President of Sales, instructed McClain to sit down.

Kelly testified in his deposition that throughout that evening, McClain repeatedly approached him, asking him to reveal to the identities of the top sales performers for 2003. Kelly initially refused, because the annual sales results were to be revealed later at a banquet on the final day of the sales meeting. McClain repeatedly asked Kelly for several hours about the results. Kelly then informed McClain while the two of them were outside the meeting room that her sales production figures for 2003 did not put her among the top three sales representatives.

Kelly further testified that upon learning this, McClain exploded in anger, and accused Kelly of manipulating sales results to deliberately force her out of the top of the sales rankings. McClain continued to "carry on," using foul language and screaming at Kelly that she was quitting Guilford and that he would hear from her lawyer.

Following her outburst, McClain proceeded to the pool area. Without provocation, she yelled at Derek Webb, a newly hired CHS; Chris Ashely, a CHS; and Mike Carlson, newly hired Business Director, stating "I'm out of here. You can all fuck off." McClain then pointed at each of the three

3

employees, stating to each of them, "you fuck off, you fuck off, and you fuck off." An unnamed individual in the pool area told McClain to stop shouting, and McClain responded that everybody should mind their own business and stay out of hers. McClain then turned around and left.

Later that evening, after returning to her hotel room, McClain twice telephoned Kerry Clem, Guilford's National Sales Director. Clem testified in his deposition that McClain told Clem that she believed she had been "cheated" out of the top sales award in 2002 and 2003. During the second phone call, McClain told Clem that she had an attorney, that she planned to file a lawsuit against Guilford, and that Guilford should be prepared to "pony up."

On the morning of January 7, 2004, Mike Carlson complained to Mike Least, an Area Business Director, that a "very ugly situation" was created when he and a group of new and current employees were "accosted" by McClain the previous evening. Carlson also complained to Kelly and Clem that morning about McClain's conduct. Derek Webb and another employee, David Fjelstul, also complained to Least about McClain's behavior.

Clem and Least conferred early that same morning. Clem informed Least that he was aware of the complaints about McClain and that McClain had told him she was quitting the night before. Clem telephoned John Buergenthal, Senior Director of Human Resources, at Guilford's headquarters in Maryland. Clem told Buergenthal about McClain's behavior towards Kelly the previous night and that McClain had told Clem during her two phone calls to him the previous night that she was quitting. Clem told Buergenthal that he had accepted McClain's resignation and wanted to confirm that his acceptance of her resignation was proper given that McClain apparently had been consuming alcohol that evening. Clem received word from Buergenthal before 1:00 p.m. that he had acted properly in accepting her resignation and that McClain should be sent home.

4

At around 1:00 p.m., Clem and Least met with McClain in the hotel lobby. Clem informed McClain that her resignation had been accepted and that she was to return home. In her deposition, McClain testified that she could not remember most of her behavior from the previous evening and was unable to recall whether she engaged in any inappropriate behavior during the National Sales Meeting.

## II.   DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and his entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Fed. R. Civ. P. 56(c).

Once the moving party has met his burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). Anderson, 477 U.S. at 257; City of Mt. Pleasant, Iowa v. Associated Elec. Coop., Inc., 838 F.2d 268, 273-74 (8th Cir. 1988). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986). Additionally, this Court is "'not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim.'" White v. McDonnell Douglas Corp., 904 F.2d 456, 458 (8th Cir. 1990) (quoting InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989)).

## A.  ADA claim

Plaintiff alleges Guilford failed to accommodate her disability, alcoholism, and discharged her because she was perceived as disabled in violation of the ADA. In order to establish a prima facie case of discrimination based on a disability, McClain must show that (1) she is disabled within the meaning of the ADA; (2) she was able to perform the essential functions of his job with or without reasonable accommodation; and (3) she suffered an adverse employment action under circumstances giving rise to an inference of unlawful discrimination. See Kiel, 169 F.3d at 1135. "The threshold requirement for coverage under the ADA is that the plaintiff be a 'qualified individual with a disability.'" Krauel v. Iowa Methodist Med. Ctr., 95 F.3d 674, 677 (8th Cir. 1996).

The ADA defines the term "disability" as "(A) a physical or mental impairment that substantially limits one of more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A)-(C); Taylor v. Nimock's Oil Co., 214 F.3d 957, 960 (8th Cir. 2000). "According to the regulations that guide the interpretation of the ADA, an impairment is 'substantially limiting' if it renders an individual unable to perform a major life activity that the average person in the general population can perform, or if it significantly restricts the condition, manner, or duration under which an individual can perform such an activity compared to the general population. 29 C.F.R.

essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986). Additionally, this Court is "'not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim.'" White v. McDonnell Douglas Corp., 904 F.2d 456, 458 (8th Cir. 1990) (quoting InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989)).

## A.  ADA claim

Plaintiff alleges Guilford failed to accommodate her disability, alcoholism, and discharged her because she was perceived as disabled in violation of the ADA. In order to establish a prima facie case of discrimination based on a disability, McClain must show that (1) she is disabled within the meaning of the ADA; (2) she was able to perform the essential functions of his job with or without reasonable accommodation; and (3) she suffered an adverse employment action under circumstances giving rise to an inference of unlawful discrimination. See Kiel, 169 F.3d at 1135. "The threshold requirement for coverage under the ADA is that the plaintiff be a 'qualified individual with a disability.'" Krauel v. Iowa Methodist Med. Ctr., 95 F.3d 674, 677 (8th Cir. 1996).

The ADA defines the term "disability" as "(A) a physical or mental impairment that substantially limits one of more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A)-(C); Taylor v. Nimock's Oil Co., 214 F.3d 957, 960 (8th Cir. 2000). "According to the regulations that guide the interpretation of the ADA, an impairment is 'substantially limiting' if it renders an individual unable to perform a major life activity that the average person in the general population can perform, or if it significantly restricts the condition, manner, or duration under which an individual can perform such an activity compared to the general population. 29 C.F.R.

§ 1630.2(j)(1)(I)-(ii). Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, breathing, learning, and working, 29 C.F.R. §1630.2(I), as well as sitting, standing, lifting, and reaching." Maziarka v. Mills Fleet Farm, Inc., 245 F.3d 675, 679 (8th Cir. 2001) (citing Fjellestad v. Pizza Hut of America, Inc., 188 F.3d 944, 948 (8th Cir. 1999)).

In determining whether a person is substantially limited in a major life activity, courts consider several factors: (1) the nature and severity of the impairment; (2) its duration or expected duration; and (3) the permanent or long-term impact from the impairment. 29 C.F.R. § 1630.2(j)(2)(I)-(iii). Maziarka, 245 F.3d at 679. "A 'disability' exists only where an impairment 'substantially limits' a major life activity, not where it 'might,' 'could,' or 'would' be substantially limiting if mitigating measures were not taken." Sutton v. United Air Lines, Inc., 527 U.S. 471, 472 (1999).

Guilford argues McClain is not "disabled" within the meaning of the ADA because she is not substantially limited in a major life activity.

McClain argues that she is substantially limited in her ability to care for herself and to interact with others. She testified at her deposition that that she has fought with others when drinking and has been arrested by the police on two occasions. She further testified that while working for a previous employer, she had alcohol related confrontations with clients while drinking at a company sponsored social event and attempted suicide once by jumping out of a moving vehicle on a highway. McClain's husband testified about her suicide attempt. He added that later on the night of the suicide attempt, McClain locked herself in a bedroom and he discovered her passed out on the bed with a gun in her hand. In her report, McClain's expert stated that McClain has given up important social, occupational or recreational activities or at least reduced these activities because of her alcohol use. Lightfoot also reported incidents including falling down steps, passing out, and

blacking out.

After reviewing the evidence, the Court concludes that McClain cannot establish that she suffers any physical or mental effects from her alcoholism that linger after she becomes sober and which substantially limit her major life activities. Therefore she cannot be deemed a qualified individual with a disability under the ADA's threshold requirement of definition of "disability." This Court therefore rejects McClain's interpretation of the language--contained in a footnote--in Miners v. Cargill Communications, Inc., 113 F.3d 820, 823 n.5 (8th Cir. 1997), as holding that alcoholism constitutes a disability *per se* which can be presumed to substantially limit major life activities.

McClain also argues she was regarded as an alcoholic because Guilford supported her entry into alcohol rehabilitation. McClain produced evidence that she had discussed her alcoholism with two of her bosses, including Kerry Clem, who supported her desire for rehabilitation, and that it was only after Clem agreed that she should enter rehabilitation that she was told she no longer worked at Guilford.

The Supreme Court has instructed there are two ways an individual may fall within the statutory definition of being regarded as having a disability under 42 U.S.C. § 12102(2)(C):

> (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one of more major life activities; or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual--it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.

Sutton, 527 U.S. at 489. The "regarded as" provision of the ADA "is intended to combat the effects of archaic attitudes, erroneous perceptions, and myths that work to the disadvantage of persons with or regarded as having disabilities." Brunko v. Mercy Hosp., 260 F.3d 939, 942 (8th Cir. 2001)

(quotation and internal punctuation omitted).

As with actual disabilities, a perceived impairment must be believed to substantially limit a major life activity. See Weber, 186 F.3d at 915. McClain, as a "regarded as" plaintiff, must show that the defendant perceived her as actually disabled. See Kellogg v. Union Pac. R. Co., 233 F.3d 1083, 1089 (8th Cir. 2000) (citing Murphy v. United Parcel Serv., Inc., 527 U.S. 516, 521-22 (1999)). Summary judgment is proper where an ADA "regarded as" plaintiff fails to show that he is regarded as "unable to work in a broad class of jobs." Shipley v. City of University City, 195 F.3d 1020, 1022 (8th Cir. 1999)

The test for a "regarded as" or perceived disability claim is whether the defendant treated plaintiff adversely because it regarded him as having an impairment that substantially limits one or more major life activities. Weber v. Strippit, Inc., 186 F.3d 907, 915 (8th Cir. 1999), cert. denied, 528 U.S. 1078 (2000) (approving a jury instruction that said, "It is your duty to determine whether defendants regarded plaintiff as having a physical impairment that substantially or materially limits a major life activity . . . [n]ot whether plaintiff actually has such an impairment.")

"An employer's knowledge of an employee's disability, without more, is not sufficient to establish a 'regarded as' claim." Kellogg v. Union Pac. R.R. Co., 233 F.3d 1083, 1089 (8th Cir. 2000). The fact that employer was aware of employee's medical problems is insufficient to establish that employer "regarded" him as disabled. Aucutt v. Six Flags Over Mid-America, Inc., 85 F.3d 1311, 1320 (8th Cir. 1996).

Here the Court concludes McClain is unable to make a showing that she was regarded as a having a disability. Even if McClain's alcoholism did not affect her ability to do her job with Guilford, the fact that Guilford was aware of her alcoholism and supported her entry into alcohol rehabilitation is insufficient to show that she was perceived as actually disabled. Cf. Taylor v.

Nimock's Oil Co., 214 F.3d 957, 961 (8th Cir. 2000) (employer's mere knowledge of plaintiff's heart attack, coupled with the sending of a get-well card and a note about her job duties, does not constitute sufficient documentation that plaintiff had a history of disability or that the employer misclassified her as disabled within the meaning of the ADA); Conant v. City of Hibbing, 271 F.3d 782, 785-86 (8th Cir. 2001) (letter to plaintiff rescinding City's employment offer because the City concluded the plaintiff could not meet the requirements of the position of general laborer did not show that the City regarded plaintiff as "disabled" within the meaning of the ADA, even though it stated the City had considered restructuring the job but concluded that to do so would negate the job's essential purpose. "No reasonable jury could find that the City regarded [plaintiff] as precluded from working a whole range or class of jobs); Cody v. CIGNA Healthcare of St. Louis, Inc., 139 F.3d 595, 598-99 (8th Cir. 1998) (employee who was offered paid medical leave and required to see a psychologist before returning to work was not regarded by her employer as having a substantially limiting impairment).

Thus, for all of the above reasons, McClain's ADA claim fails as a matter of law.

**B.     Family and Medical Leave Act claims**

The FMLA provides job security to employees who must miss work because of their own illnesses, to care for family members, or to care for new babies. 29 U.S.C. § 2612(a)(1)(A)-(D). The FMLA provides eligible employees up to 12 workweeks of unpaid leave during any 12-month period. Id. § 2612(a)(1). An employee must provide notice to an employer that he plans to take FMLA leave. Id. § 2612(e)(2).

Two types of claims exist under the FMLA: (1) "interference" or "(a)(1)" claims in which the employee alleges that an employer denied or interfered with his substantive rights under the FMLA and (2) "retaliation" or "(a)(2)" claims in which the employee alleges that the employer discriminated

against him for exercising his FMLA rights. 29 U.S.C. § 2615(a)(1)-(2).

McClain claims Guilford violated the FMLA (1) by interfering with her right to take medical leave because of a serious health condition; and (2) by terminating her in retaliation for requesting FMLA leave. Guilford argues McClain is unable to establish as a matter of law that Guilford violated either the "interference" or "retaliation" theories of the FMLA because she would have been terminated due to her misconduct had her resignation not been accepted.

1.  Interference Claim

An employer is prohibited from interfering with, restraining, or denying an employee's exercise of or attempted exercised of any right contained in the FMLA. 29 U.S.C. § 2615(a)(1). Interference includes "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave. It would also include manipulation by a covered employer to avoid responsibilities under FMLA." 29 C.F.R. § 825.220(b). An employer's action that deters an employee from participating in protected activities constitutes an "interference" or "restraint" of the employee's exercise of his rights. Bachelder v. Am. W. Airlines, Inc., 259 F.3d 1112, 1124 (9th Cir. 2001). "A violation of this provision creates what is commonly known as the interference theory of recovery." Throneberry v. McGehee Desha County Hosp., 403 F.3d 972, 977 (8th Cir. 2005). When an employer attaches negative consequences to the exercise of protected rights, it has "chilled" the employee's willingness to exercise those rights because he or she does not want to be fired or disciplined for doing so. Bachelder, 259 F.3d at 1124.

In an interference claim, an "employee must show only that he or she was entitled to the benefit denied." Russell v. N. Broward Hosp., 346 F.3d 1335, 1340 (11th Cir.2003) (stating that the burden to establish an interference claim is less than that of a retaliation claim, which requires a showing that the employer's actions were motivated by an impermissible retaliatory animus). The

Eighth Circuit has recognized that an employee can prove interference with an FMLA right regardless of the employer's intent. Throneberry, 403 F.3d at 979. An employee can prevail under an interference theory if she was denied substantive rights under the FMLA for a reason connected with his FMLA leave. Id. "[E]very discharge of an employee while [he] is taking FMLA leave interferes with an employee's FMLA rights. However, the mere fact of discharge during FMLA leave by no means demands an employer be held strictly liable for violating the FMLA's prohibition of interfering with an employee's FMLA rights." Id. at 980 (emphasis added). Thus, where an employer's reason for dismissal is insufficiently related to FMLA leave, the reason will not support the employee's recovery. Id. at 979 (holding that strict liability does not apply to an (a)(1) claim).

2. Retaliation Claim

The FMLA prohibits employers from discriminating against an employee for asserting his rights under the Act. Darby v. Bratch, 287 F.3d 673, 679 (8th Cir.2002) (citing 29 U.S.C. § 2615(a)(2)). "This prohibition necessarily includes consideration of an employee's use of FMLA leave as a negative factor in an employment action." Id. "Basing an adverse employment action on an employee's use of leave ... is therefore actionable." Smith v. Allen Health Sys., Inc., 302 F.3d 827, 832 (8th Cir. 2002).

"An employee can prove retaliation through circumstantial evidence, using the McDonnell Douglas burden-shifting analysis. Smith v. Allen Health Sys., Inc., 302 F.3d 827, 832 (8th Cir. 2002) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–03 (1973)). First, the employee must establish a prima facie case of retaliatory discrimination by showing that 'she exercised rights afforded by the Act, that she suffered an adverse employment action, and that there was a causal connection between her exercise of rights and the adverse employment action.' Id. Second, once the employee establishes a prima facie case, the burden shifts to the employer to article

a legitimate, nondiscriminatory reason for its actions. Id. at 833. Finally, the burden shifts back to the employee to demonstrate that the 'employer's proffered reason is pretextual.' Id. The employee must present evidence that '(1) creates a question of fact regarding whether [the defendant's] reason was pretextual and (2) creates a reasonable inference that [the defendant] acted in retaliation.' Id." Hite v. Vermeer Mfg. Co., __ F.3d __ (8th Cir. 5/9/2006).

Construing the facts in light most favorable to McClain, the Court finds there are genuine issues of material fact which preclude the entry of summary judgment on McClain's FMLA claims, including but not limited to whether McClain was an employee at the time she requested medical leave for rehabilitation and whether Guilford had accepted McClain's resignation the night before she requested medical leave for rehabilitation. As a result, Guilford's motion for summary judgment on McClain's FMLA claim will be denied.

## III. CONCLUSION

For all of the above reasons, the Court will grant defendant summary judgment on McClain's ADA claim. The Court will deny summary judgment on McClain's FMLA claims.

Accordingly,

**IT IS HEREBY ORDERED** that Guilford Pharmaceutical Products, Inc.'s motion for summary judgment is granted in part and denied in part. (Doc. 26)

**IT IS FURTHER ORDERED** that plaintiff Robin McClain's motion for leave to file in excess of the page limit is **GRANTED.** (Doc. 28)

CHARLES A. SHAW
**UNITED STATES DISTRICT JUDGE**

Dated this 30th day of May, 2006.